**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GLENN O. HAWBAKER, INC.,

Petitioner,

v.

WILLIAM H. LANE INCORPORATED,

Respondent.

No. 4:25-CV-00989

(Chief Judge Brann)

# MEMORANDUM OPINION

**SEPTEMBER 23, 2026**

## I. BACKGROUND

On June 2, 2025, Petitioner Glenn O. Hawbaker, Inc. ("GOH") filed a Petition to Vacate the Arbitration Award, or in the alternative, Modify the Arbitration Award against Respondent William H. Lane Incorporated ("WHL"). This motion is now ripe for disposition. For the reasons that follow, it is denied. The Arbitration Award is confirmed.

## II. DISCUSSION

### A. Factual Background

In 2020, Susquehanna County ("the Project Owner") awarded the Susquehanna Public Safety Building Project (the "Project") to WHL, a general contractor.[1] On November 2, 2020, WHL entered into a subcontract arrangement

[1] Doc. 1-2, Ex. A (Subcontract Agreement) at 1.

with GOH.[2] Under the terms of the contract, GOH would pave Rolled Compacted Concrete ("RCC") on the Project for $759,010.[3] Although both parties intended GOH to commence work in April 2021, issues concerning prior project bids, elevation challenges, and weather conditions delayed the start of the Project.[4] Ultimately on August 9, 2021, GOH began its performance on the Project.[5]

Several issues quickly arose. On the first day of work, GOH's specialized paver suffered from mechanical failures which spoiled RCC materials.[6] Then on the following day, August 10, 2021, WHL Project Manager Seth Knapp advised GOH that its work was not compliant with Pennsylvania Department of Transportation regulations.[7] WHL alleges other issues in the following days, including excessive concrete dryness, late sealing, and faulty bearings.[8] Nevertheless, by August 17, 2021, GOH notified WHL that it had completed 50% of its work scope.[9]

On August 23, 2021, GOH met with WHL.[10] During the onsite meeting, representatives from GOH, WHL, and the Project Owner surveyed and inspected the

---

[2] Doc. 1-3 (Post-Hr'g Br. of Claimant) at 9. Although the subcontract agreement is dated June 25, 2020, GOH notes that date to be in error attributable to "the WHL software that generates contracts." *Id.*

[3] Doc. 1-5 (Award of Arbitrator) at 1.

[4] Doc. 1 (Pet. to Vacate Arbitration Award) at 3; Doc. 1-4 (Post-Hr'g Brief of Respondent) at 4. GOH alleges that throughout the delay period, WHL failed to appropriately inform GOH of any reasons for delay.

[5] Doc. 1-4, at 4; Doc. 1, at 3.

[6] Doc. 1-3, at 14.

[7] *Id.* at 14.

[8] Doc. 1-4, at 6-7.

[9] Doc. 1, at 3; Doc. 1-3, at 15.

[10] Doc. 1-3, at 49; Doc. 1-4, at 7-10.

RCC paving.[11] At the meeting, the parties identified three primary action items to be addressed and GOH agreed to remedy the noted issues.[12] Following the site meeting, WHL alleges further performance issues were caused by paver failures and outages at GOH's concrete supplier.[13] On August 30, 2021, the parties acknowledge another paver breakdown.[14] According to GOH, this incident required a replacement paver;[15] on September 1, 2021, GOH notified WHL that it had secured a new paver and would resume work on September 8 and 9.[16] Soon after GOH's notice, WHL sent GOH a suspension letter halting performance.[17] WHL's letter cited several reasons for the suspension, including compliance issues and time delays.[18] WHL also secured CRT Consulting to review the installation and notified GOH that during the pendency of the investigation, payments and performance would be suspended.[19] At the point of suspension, GOH alleges that it was two days of performance away from completion.[20]

During CRT Consulting's ongoing investigation, GOH submitted Payment Application #1 for $472,225.93 on September 16, 2021.[21] WHL reiterated that

[11] Doc. 1-3, at 15; Doc. 1-4, at 7-10.
[12] Doc. 1-3, at 15; Doc. 1-4, at 7-10.
[13] Doc. 1-4, at 10.
[14] Doc. 1-3, at 16; Doc. 1-4, at 10-11.
[15] Doc. 1-3, at 16.
[16] *Id*.
[17] Doc. 1-4, at 11.
[18] Doc. 1-3, at 17; Doc. 1-4, at 10-11.
[19] Doc. 1-4, at 10-11.
[20] Doc. 1-3, at 67.
[21] *Id*. at 18; Doc. 1-4, at 12.

payments were suspended.[22] On October 7, 2021, WHL relayed preliminary findings from CRT Consulting's review.[23] Those findings identified several deficiencies and failures to comply with Pennsylvania Department of Transportation requirements.[24] In the following weeks, the parties conducted another site inspection and discussed a proposed remedial plan.[25] Ultimately, no agreement was reached.

On November 1, 2021, WHL relayed CRT Consulting's final report ("CRT Report").[26] The parties dispute its significance. GOH argues that because the CRT Report explicitly noted that "[t]he strength of the overall in place RCC is likely adequate for its intended use," the report impliedly recognized that the suspension was unjustified.[27] For its part, WHL claims that the CRT Report identified deficiencies in tested RCC core samples which required remedial treatment.[28] Although GOH's proposed remedial plan was rejected, GOH re-initiated its work on November 18, 2021.[29] By late November, GOH completed the initial RCC work scope.[30] Then in mid-December, GOH sealed the Project's fresh joints with Euclid Baracade WB 244 in accordance with the CRT Report's findings.[31] Also in

---

22 Doc. 1-3, at 18; Doc. 1-4, at 12.
23 Doc. 1-4, at 12-13.
24 Doc. 1-3, at 19-21; *Id.*
25 Doc. 1-3, at 19-21.
26 *Id.* at 21.
27 *Id*. at 22.
28 Doc. 1-4, at 14-17.
29 Doc. 1-3, at 25; *Id*. at 16-18.
30 Doc. 1-4, at 20.
31 *Id*. at 21.

December, GOH relayed Payment Application #2, which totaled $210,883.07.[32] At around the same time, GOH sent five change orders for the costs of the November delays allegedly caused by WHL's suspension of the Project.[33] In sum, these change orders totaled $161,834.44.[34] By the end of 2021, WHL relayed no payment to GOH apart from a joint check of $197,881.86 to GOH's concrete provider.[35]

On December 22, 2021, WHL provided GOH with an itemized deductive change order for $504,255.86.[36] On January 19, 2022, WHL updated its deductive change order to $478,885.15.[37] A week later on January 26, 2022, GOH submitted Payment Application #3 for its retainage of $75,901.11.[38] During this period, WHL issued another joint check for $111,306.50 to GOH's concrete provider.[39]

On April 7, 2022, WHL informed GOH that the RCC joints had begun to show signs of failure.[40] The parties again met onsite in late May and GOH relayed a proposed remediation plan on June 8, 2022.[41] WHL rejected the plan.[42] The parties met onsite in July 2022, after which GOH submitted a further revised proposed

---

32 Doc. 1-3, at 55. WHL contends that GOH relayed Payment Application #2 on January 5, 2022, as opposed to December 2021 as GOH suggests. Doc. 1-4, at 21.
33 Doc. 1-3, at 78-79.
34 *Id*.
35 *Id*. at 77-78.
36 *Id*. at 28-29; Doc. 1-4, at 21.
37 Doc. 1-3, at 29.
38 Doc. 1-3, at 29.
39 *Id*.
40 *Id*. at 30; Doc. 1-4, at 22.
41 Doc. 1-4, at 22-23.
42 Doc. 1-4, at 23-24.

remediation plan on July 25, 2022.[43] A two-month back-and-forth followed, involving issues of timeliness and the viability of proposed methods.[44] On September 26, 2022, the parties participated in a conference call to discuss the dispute.[45]

On October 5, 2022, WHL advised GOH that it was in default and that further payments would be suspended.[46] Parties disagree as to why the remediation plan was never initiated—WHL argues that GOH needlessly failed perform on its self-imposed start dates of October 3, 2022, or its modified date of October 6, 2022, while GOH argues that regulatory hinderances, non-approval, and miscommunications by WHL made it impossible for GOH to perform as scheduled.[47] Be that as it may, on October 6, 2022, WHL informed GOH that WHL would exercise its rights to remediate or replace GOH's allegedly defective work with incurred costs assessed to GOH or deducted as monetary credits.[48] On November 7, 2022, WHL sent GOH a Notice of Subcontract Termination; however, GOH argues that WHL's October 6 correspondence qualified as a notice of termination.[49]

---

43 Doc. 1-3, at 29-31; *Id*. at 24-25.
44 Doc. 1-3, at 31-33.
45 *Id.* at 32; Doc. 1-4, at 25.
46 Doc. 1-3, at 39; Doc. 1-4, at 28-29.
47 Doc. 1-3, at 33-34; Doc. 1-4, at 26-30.
48 Doc. 1-3, at 40-41; Doc. 1-4, at 29-30.
49 Doc. 1-3, at 70-72.

After GOH's termination, WHL engaged Wayne Gravel Products ("Wayne") for remedial work.[50] WHL executed its subcontract with Wayne for $300,000 in Spring 2023, with project completion achieved in June 2023.[51] WHL engaged JP Reilly for additional remedial work, costing $24,376.64.[52]

On April 23, 2023, GOH filed an American Arbitration Association (AAA) action against WHL.[53] In its demand, GOH raised several claims. It alleged that WHL breached its contract by improperly delaying the original Project start date.[54] GOH also contended that WHL breached by improperly suspending GOH's performance on September 1, 2021, highlighting the CRT Report as dispositive evidence that the suspension was unjustified.[55] Finally, GOH claimed unjust enrichment and a violation of the Pennsylvania Procurement Code's Prompt Payment Act in addition to its breach of contract claim.[56] In response, WHL argued that it properly terminated and suspended GOH's performance and was accordingly entitled to credits for GOH's defaults.[57]

---

50 Doc. 1-3, at 45; Doc. 1-4, at 30-31.

51 Doc. 1-4, at 31. GOH argues that WHL inflated its Wayne performance costs by tens of thousands of dollars. Doc. 1-3 at 64-65. WHL responds that Wayne increased its estimates after an on-site review revealed the "deteriorating condition of the joints and RCC surface." Doc. 1-4, at 31.

52 Doc. 1-4, at 30-31.

53 Doc. 1-1 (Demand for Arbitration) at 1-2.

54 Doc. 1-1, at 10-13.

55 *Id.*

56 *Id*.

57 Doc. 1-2 (Arbitration Answering Statement) at 10-14.

After an evidentiary hearing that encompassed eight days, eleven witnesses, and over three hundred exhibits, the arbitrator awarded a net amount to WHL in the sum of $81,098.75.[58] Regarding GOH's claims, the arbitrator found that WHL improperly suspended GOH's performance.[59] The arbitrator consequently increased the original subcontract sum of $759,010 by $55,362.18 in accordance with the five Change Order claims submitted by GOH.[60] However, the arbitrator also found that WHL incurred costs due to GOH's performance defaults in the sum of $586,282.71.[61] To determine the final award under to the subcontract,[62] the arbitrator subtracted the sum of credits due to WHL and the previous two joint checks to GOH's concrete supplier ($895,470.93) from the subcontract sum combined with the Change Order claims ($814,372.18).[63] The arbitrator therefore gave a net award for WHL in the sum of $81,098.75 on March 4, 2025.[64]

---

58 Doc. 1-3, at 1; Doc. 1-5, at 3.

59 Doc. 1-5, at 2.

60 *Id*. at 2-3.

61 *Id.*

62 The subcontract indicates that WHL's incurred costs "may be back-charged against the Subcontract sum." The subcontract also provides that "all charges, expenses, losses, costs, damages, and attorneys' fees, incurred as a result of the Subcontractor's failure to perform" may be charged against the subcontractor. In circumstances where "such expenses and damages exceed the balance due, the Subcontractor agrees to promptly pay the difference to the Contractor." Doc. 1-2, Ex. A ¶ 30, 35.

63 *Id.*

64 *Id*. at 3.

Three months later, GOH initiated the instant action to vacate the arbitration award or, in the alternative, modify that award.[65] The arguments that they are entitled to either form of relief arise under the Federal Arbitration Act ("FAA").

### B. Vacatur of Arbitration Award (9 U.S.C. § 10 and "Manifest Disregard")

"There is a strong presumption under the Federal Arbitration Act, [ ] in favor of enforcing arbitration awards."[66] The FAA provides only four grounds for vacatur of an arbitration award under 9 U.S.C. § 10(a). Relevant here, the FAA empowers a district court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[67] But this Court does not review the factual or legal underpinnings of arbitration awards "as an appellate court does in reviewing decisions of lower courts."[68] The Court is considerably more constrained. Petitioners seeking to vacate an arbitration award "must clear a high hurdle. It is not enough for petitioners to show that the [arbitrator] committed an error—or even a serious error."[69] Instead, an award will be vacated "only when [an]

---

65 Doc. 1.

66 *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

67 9 U.S.C. § 10(a).

68 *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

69 *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citing *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'"[70]

Consequently, "review under § 10 focuses on misconduct rather than mistake."[71] Courts may also vacate an award "if it reflects a 'manifest disregard' of the agreement."[72] "A party seeking to vacate an arbitration award based on the theory that the arbitrators manifestly disregarded the law bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it."[73]

---

70 *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 503, 509 (2001) (*per curiam*) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

71 *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350-51 (2011); *see Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013) ("Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all").

72 *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287 (3d Cir. 1996) (citing *News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)); *see also Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969) (holding that an arbitration award must be upheld "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a *manifest disregard* of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.") (emphasis added).

73 *Bellantuono v. ICAP Secs. USA, LLC*, 557 F. App'x 168, 174 (3d Cir. 2014) (quotation omitted). This Court notes that in the aftermath of *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), it remains an open question as to whether "manifest disregard" suffices as an independent ground to vacate an arbitration award. *Whitehead v. Pullman Group, LLC*, 811 F.3d 116, 120-21 (3d Cir. 2016). The Third Circuit has assumed—but not decided—that "manifest disregard . . . remains a valid basis for vacating arbitration awards." *Buchmiller v. Krannich Solar West, LLC*, No. 22-07221, 2025 WL 582252, at *11 n.6 (D.N.J. Feb. 20, 2025) (citing Bayside *Construction LLC v. Smith*, No. 21-2716, 2022 WL 2593303, at *2 n.6 (3d Cir. July 8, 2022)). Several courts in the Third Circuit recognize "manifest disregard" as "merely shorthand for § 10(a)(3) or § 10(a)(4)." *Buchmiller*, 2025 WL 582252, at *11 n.6 (citing *Vitarroz Corp. v. G. Willi Food Intern. Ltd.*, 637 F.Supp.2d 238, 244-45 (D.N.J. 2009) (noting that several courts have continued to "apply the manifest disregard standard as a means to enforce § 10, consistent with *Hall Street*.")).

### 1. Analysis

Several cases illustrate the "high hurdle" that GOH faces.[74] In *Oxford Health Plans LLC v. Sutter*, the Supreme Court considered an appeal from the United States Court of Appeals for the Third Circuit.[75] The Third Circuit upheld the confirmation of an award despite a colorable argument that the arbitrator was mistaken as to whether the underlying agreement permitted class arbitration procedures.[76] The Court ultimately affirmed. Because the petitioner sought arbitration, they "must now live with that choice"—a mistaken arbitral interpretation, without more, does not entitle petitioner to "rerun the matter in a court."[77]

Additionally, in *Brentwood Medical Associates v. United Mineworkers of America*, the Third Circuit found that a "certain[ ]" mistake in violation of an underlying agreement was insufficient to warrant vacatur.[78] There, arbitrators relied on contractual language outside of a collective bargaining agreement despite being expressly forbidden from modifying or adding to the agreement.[79] The district court upheld the award. On appeal, the Third Circuit described the mistake as "glaring" and "inexplicabl[e]."[80] And, even though the award most strongly relied on the

---

74 *Stolt-Nielsen S.A.*, 559 U.S. at 671.
75 *Sutter*, 569 U.S. at 566-68.
76 *Id*. at 572-73.
77 *Id*. at 573.
78 *Brentwood Med. Assocs.*, 396 F.3d at 243.
79 *Id*. at 239-40.
80 *Id*. at 238, 243.

interpolated language, the Third Circuit affirmed the district court as the remainder of the arbitrator's analysis "pass[ed] the minimum rationality threshold."[81]

In *Whitehead v. Pullman Group, LLC*, the petitioner contended that arbitrators had misapplied New York's Dead Man's Statute in a way that disregarded communications vital for the presentation of his case.[82] The Third Circuit held that, even assuming arbitrators had misapplied the substantive law, "legal error alone is not a sufficient basis to vacate" an arbitration award.[83] An argument of manifest disregard was similarly unavailing, as the Third Circuit explained that the standard required the award to "fly in the face" of legal doctrine acknowledged by the arbitrator.[84]

Finally, in *Sabre GLBL, Inc v. Shan*, the petitioner challenged an arbitrator's damages methodology as inconsistent with Texas law.[85] On one issue, the Third Circuit acknowledged that whether the arbitrator had committed a legal error was a "closer question."[86] But because the petitioner had not raised that particular point to the arbitrator, the Third Circuit declined to disturb the award and found that the petitioner had waived the objection.[87]

---

81 *Id.* at 243.
82 *Whitehead*, 811 F.3d at 117-18.
83 *Id*. at 117.
84 *Id.* at 120-21.
85 *Sabre GLBL, Inc v. Shan*, 779 F. App'x 843, 847-48 (3d Cir. 2019).
86 *Id*.
87 *Id.* at 854-55.

Here, GOH argues that vacatur or modification is necessary because the arbitrator's award was, allegedly, internally inconsistent. In brief, because the arbitrator awarded GOH its full subcontract balance, GOH contends that the arbitrator impliedly found that WHL committed a material breach.[88] Therefore, the arbitrator's subsequent awarding of damages to WHL for delays and remedial measures would be internally inconsistent, as a breaching party cannot recover for injuries incurred because of its own material breach.[89] From the record provided, GOH did not note this principle of law at any stage of arbitration, nor in its post-hearing briefings.

At bottom, GOH asks this Court to vacate an arbitration award solely due to an alleged legal error. Without more, GOH has not met its burden. Even assuming that GOH is correct that the arbitration award cannot be reconciled with Pennsylvania law, the asserted error does not establish that the arbitrator exceeded his powers under § 10(a)(4).

---

88 Doc. 29 (Pet'r's Br.) at 6. To be more specific, GOH argues "The Arbitrator found that WHL improperly suspended GOH's work on the Project in 2021. By doing so, the Arbitrator found that WHL first breached the Subcontract, and the Arbitrator awarded GOH monetary damages for some of the change order amounts which were denied by WHL. While the Arbitrator's Award is silent as to whether WHL's failure to pay GOH's change orders was a material breach, the Arbitrator's Award was for the entire Subcontract balance not paid by WHL. Nevertheless, the Arbitrator also awarded WHL for conduct occurring after it materially breached the Subcontract." *Id*. (citations omitted).

89 *Id*. at 10 (citing *Berkowitz v. Mayflower Securities*, 317 A.2d 584, 586 (Pa. 1974)).

This Court is not a perfecting board of review. Rather, this Court's analysis is guided by questions of whether the arbitrator "strayed from his delegated task,"[90] not whether the arbitrator "committed an error—or even a serious error."[91] Which is to say, this Court looks for excess of arbitral authority, not legal error.

"[I]t is beyond the Court's purview to interrogate each of the Arbitrator's findings and conclusions."[92] But the Court recognizes that the present parties agreed to arbitration of "[a]ll claims, disputes and other matters in question arising out of or relating to th[e] subcontract or the breach thereof . . . ."[93] The parties then submitted the contractual dispute, including competing claims for damages, to the arbitrator. The arbitrator resolved those claims and apportioned damages to each entitled party.

Despite conclusory allegations to the contrary, GOH does not claim that the arbitrator granted relief outside the scope of the arbitration or otherwise ventured beyond the submitted dispute. GOH instead contests the arbitrator's resolution of a concededly proper issue. GOH's contention that the award cannot be reconciled under Commonwealth law is an attack on the correctness of the award as opposed to its finality or definiteness.[94] But such an alleged inconsistency within the award does not transform "an error—or even a serious error"[95] into an "imperfect execution" of

90 *Sutter*, 569 U.S. at 571-72.
91 *Stolt-Nielsen S.A.*, 559 U.S. at 671.
92 *Buchmiller*, 2025 WL 582252, at *12.
93 Doc. 1-2, Ex. A ¶ 35.
94 *Id.*
95 *Stolt-Nielsen S.A.*, 559 U.S. at 671.

arbitral powers under § 10(a)(4), or an act of manifest disregard of the law.[96] On these facts, GOH is similar to petitioners in *Sutter* and *Brentwood Medical Associates*, who each alleged that arbitration awards inconsistent with the underlying agreement could not stand. Just as the Supreme Court and the Third Circuit rejected those arguments, even assuming a colorable error of contractual interpretation, this Court likewise rejects GOH's arguments.

So too for standalone legal errors. Recall *Whitehead*, where a petitioner's lone argument that a critical statute had been misapplied—even if true—did not warrant vacatur. Likewise, GOH cannot make the necessary showing beyond mere legal error.[97] The record does not establish that GOH presented the Pennsylvania material breach rule to the arbitrator. At least in its post-hearing submissions and the record as a whole, GOH failed to raise the very points it now invokes. Instead, GOH developed that theory for the purpose of seeking vacatur. As discussed, manifest disregard requires more than inconsistency between a governing rule and an award, but a showing that the arbitrator knew of the controlling rule and chose not to follow it.[98] Nothing in the record permits that inference. GOH is therefore similarly situated to the petitioner in *Shan* who waived her objection because she had failed to raise

---

[96] 9 U.S.C § 10(a)(4).

[97] *Id*. at 117.

[98] *Bellantuono*, 557 F. App'x at 174; *Shan*, 779 F. App'x at 854-55.

the legal issue before the arbitrator.[99] GOH cannot demonstrate conscious disregard of a legal rule that, so far as the record shows, it never asked the arbitrator to apply.

GOH may be able to show that Pennsylvania law supplied the arbitrator with a relevant rule—it may even be able to show, for purposes of argument, that a court applying Pennsylvania law de novo would have reached a different result. But this Court does not consider what it would have done as the arbitrator, nor does it consider whether the arbitrator best represented Pennsylvania contract law. The threshold question is much narrower: whether the record establishes the need for the "extraordinary remedy"[100] of vacatur by showing the arbitrator knew of a clearly controlling rule and deliberately refused to apply it in favor of "his own brand of industrial justice."[101] Here, it does not.

However, even if GOH had informed the arbitrator of the governing material-breach provision, there is sufficient evidence to suggest that the arbitrator's decision passed the "minimum rationality threshold."[102] While GOH contends the arbitrator's granting of the remainder of the subcontract sum implies a dispositive finding of material breach, the Court notes that another explanation raised by WHL is

---

99 *Shan*, 779 F. App'x at 854-55.

100 *Tate Orchards v. Rain & Hail, LLC*, No. 1:13-CV-691, 2013 WL 1833713, at *3 (M.D. Pa. May 1, 2013); *see also Cartwright v. Fid. Bank*, No. 2:12-CV-01502, 2014 WL 4792239, at *1 (W.D. Pa. Sept. 24, 2014); *Bonnie Brae Fruit Farms, Inc. v. Rain & Hail*, LLC, No. 1:13-CV-687, 2013 WL 1833633, at *3 (M.D. Pa. May 1, 2013); *Maignan v. Precision Autoworks*, No. CV 13-3735, 2020 WL 1061049, at *2 (D.N.J. Mar. 4, 2020).

101 *Enterprise Wheel & Car Corp.*, 363 U.S. at 597.

102 *Brentwood Med. Assocs.*, 396 F.3d at 243.

plausible: the subcontract itself indicates that WHL's incurred costs "may be back-charged against the Subcontract sum."[103] The Court also notes that the subcontract provides that "all charges, expenses, losses, costs, damages, and attorneys' fees, incurred as a result of the Subcontractor's failure to perform" may be charged against the subcontractor.[104] In circumstances where "such expenses and damages exceed the balance due, the Subcontractor agrees to promptly pay the difference to the Contractor."[105] On the plain language of the subcontract agreement itself, the Court finds that the subcontract agreement provides that (1) the arbitration award's starting point is the subcontract sum; (2) incurred costs against the subcontractor are taken from said subcontract sum; and (3) if the incurred costs are greater than the remaining subcontract sum, the subcontractor is obligated to pay. Here, the arbitrator followed the *exact* process considered within the subcontract agreement. That is a far cry from the arbitral excess that the FAA requires.

It should be noted that GOH attempts to leverage the underlying process to support its claim. It alleges that by following the contracted-to process, the arbitrator's decision was still inconsistent with governing law. Even assuming proper notice of the governing law, the question would *not* be whether the arbitrator erred "as a matter of law."[106] Rather, "[t]he question properly before us, boiled down

---

[103] Doc. 31 (Resp't Br.) at 10; Doc. 1-2, Ex. A ¶ 36.
[104] Doc. 1-2, Ex. A ¶ 30.
[105] *Id.*
[106] *Tate Orchards*, 2013 WL 1833713, at *3.

to its essence, is whether the arbitrator acted rationally . . . ."[107] By adhering to the process enumerated in the subcontract agreement, the arbitrator did just that.

GOH's additional arguments for vacatur, namely that the award "makes no finding as to the ultimate issue of whether the default terminations were proper," fail for similar reasons.[108] Under § 10(a)(4), "a reasoned award is something more than a line or two of unexplained conclusions, but something less than full findings of fact and conclusions of law on each issue raised before the panel."[109] Here, the arbitrator's award falls comfortably within those two boundaries, delivered after three evidentiary hearings spanning the course of eight days. The arbitrator properly "set[ ] forth the basic reasoning," providing preliminary findings as to the distribution of awards for each party.[110] Despite GOH's desire for a more elaborate explanation, an arbitrator is not required to explicitly "delve into every argument made by the parties."[111]

So, even if in error, there is no evidence that suggests the arbitrator erred at the level required for vacatur. Rather, such an error—even a "certain," "glaring," or "inexplicable" one—is a risk that parties bargained for by agreeing and consenting to arbitration.[112] As the Supreme Court has noted, "[t]he potential for those mistakes

---

107 *Id.*
108 Doc. 29, at 16.
109 *Shan*, 779 F. App'x at 855 (quoting *Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. Of Med.*, 826, F.3d 634, 540 (2d Cir. 2016)).
110 *Id.*
111 *Id.*
112 *Brentwood Med. Assocs.*, 396 F.3d at 238, 243.

is the price of agreeing to arbitration . . . . [t]he arbitrator's construction holds, however good, bad, or ugly."[113] It is certainly true that a court does not serve as a "rubber stamp" for the arbitrator's decision.[114] But the FAA does not authorize judicial reconsideration for a theoretical tension between the relief and substantive law alone. Neither an error of contractual interpretation nor legal application can support vacatur without something more. GOH has not proven an error, nor something more. Therefore, GOH has failed to meet its required burden for vacatur.

### C. Modification of Arbitration Award (9 U.S.C. § 11)

With GOH's petition for vacatur denied, the Court now considers the alternative prayer for modification. At the outset, the Court notes its January 16, 2026 memorandum opinion on WHL's prior Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and Motion for Sanctions under Local Rule 7.8(a). Given the merits-adjacent arguments that parties briefed for those motions, the Court reserved consideration of those same arguments when it finally adjudicated the underlying petition.[115] As GOH's and WHL's current contentions revolve around vacatur, the Court relies on GOH's initial Petition, August 19, 2025 Brief in Opposition, and

---

[113] *Sutter*, 569 U.S. at 572-73.

[114] *Monongahela Valley Hosp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC*, 386 F. Supp. 3d 596, 599 (W.D. Pa. 2019).

[115] Doc. 23 (Jan. 16, 2026 Mem. Op.) at 5.

WHL's August 5, 2025 Brief in Support for arguments on modification. GOH's arguments for modification fare no better than its arguments for vacatur.

Modification is a different, but similarly narrow, remedy. Under 9 U.S.C. § 11, modification or correction is proper under the following circumstances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.[116]

These statutory grounds are exclusive.[117] A court must first determine whether one of § 11(a)'s enumerated conditions apply before it may modify the award.[118] Governed by the parameters of the statute, § 11(a) does not give a court a license to reconsider the underlying merits of the arbitrator's decision under the auspices of correction. Which is to say, "the wording of Section 11 reflects that modification may occur only if the purported mistake does not affect the merits of the controversy."[119] "[S]ection 11(a) is a vehicle for correcting 'obvious numerical

---

[116] 9 U.S.C. § 11.
[117] *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 247 (3d Cir. 2021).
[118] *Id.*
[119] *Winscher v. Davison*, No. 24-871, 2025 WL 3472696, at *8 (W.D. Pa. Sept. 5, 2025), *report and recommendation adopted*, No. 24-871, 2026 WL 472025 (W.D. Pa. Feb. 19, 2026) (citing *Libya v. Strabag*, No. 21-7128, 2022 WL 1715989, at *2 (D.C. Cir. May 27, 2022).

gaffe[s] in computing' the award, not for relitigating whether the arbitrator 'made a mistake on the merits."[120]

Here, GOH advances similar arguments to its prayer for vacatur, claiming that the award was internally inconsistent.[121] GOH also argues that the arbitrator improperly calculated attorneys fees because "the award for attorney fees *itself was incorrect* because the Arbitrator failed to make the requisite finding based on the Subcontract language and underlying law . . . ."[122] Far from an "obvious numerical gaffe," GOH's claims still rely on the merits of the case.[123] That is precisely the circumstance that courts are cautioned against relitigating. For all the reasons discussed above, arbitration petitions do not serve as de novo second chances—GOH may not "rerun th[is] matter in a court."[124]

---

120 *Grain v. Trinity Health*, 551 F.3d 374, 379 (6th Cir. 2008) ("section 11(a) is a vehicle for correcting 'obvious numerical gaffe[s] in computing' the award, not for relitigating whether the arbitrator 'made a mistake on the merits.').

121 Doc. 12-2 (Pet'r's Br. on Mot. To Dismiss) at 8-9.

122 *Id.*

123 *Grain*, 551 F.3d at 379.

124 *Sutter*, 569 U.S. at 573.

## III. CONCLUSION

For the reasons set forth above, GOH's Petition to Vacate Arbitration Award, or in the Alternative, Petition to Modify Arbitration Award, is denied. The Arbitration Award is confirmed**.**

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge